James P. Menton, Jr. (Cal. Bar No. 159032)
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
Telephone:  310-552-0130
Facsimile:  310-229-5800
Email: JMenton@RobinsKaplan.com

Michael A. Kolcun (*pro hac vice to be submitted*)
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, New York 10022-4611
Telephone:  212-980-7400
Facsimile:  212-980-7499
Email: MKolcun@RobinsKaplan.com

*Attorneys for Plaintiff Robert W. Seiden,*
*in his capacity as Receiver for*
*China North East Petroleum Holdings Limited*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ROBERT W. SEIDEN,<br>in his capacity as Receiver for<br>CHINA NORTH EAST PETROLEUM<br>HOLDINGS LTD.,<br><br>               Plaintiff,<br><br>v.<br><br>CHAO JIANG, SHAOHUI CHEN,<br>WANG HONGJUN, JU GUIZHI, and<br>SUN JISHUANG,<br><br>               Defendants. | Case No.: 2:16-cv-06027<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Robert W. Seiden ("Receiver"), in his capacity as Receiver for Plaintiff China North East Petroleum Holdings Limited ("Plaintiff" or "CNEP"), by and through undersigned counsel, hereby brings this Complaint against Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, Ju Guizhi, and Sun Jishuang (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     The Receiver was appointed over CNEP in order to carry a judgment into effect against the company on behalf of its shareholders, and specifically, to ensure its compliance with an order to buyout their shares in the company.

2.     The Receiver was granted broad powers to accomplish these objectives, such as full authority and control over any CNEP property wherever located, the power to commence an action in the company's name, and the ability to prevent or avoid any transaction which would otherwise hinder its compliance with the judgment and buyout order.

3.     In the course of his investigation, the Receiver has uncovered substantial evidence that millions of dollars was wrongfully misappropriated from CNEP by Defendants, all of whom are or were officers and directors of the company and exercised significant control over its corporate affairs.

4.     Defendants engaged in additional instances of intentional misconduct in breach of their fiduciary duties of care, loyalty, and good faith to the company. For example, Defendants' various acts and omissions caused, among other things, the delisting of CNEP's common stock from the New York Stock Exchange, revocation of each class of its securities, and entry of the judgment and buyout order.

5.     CNEP brings this action for monetary damages against Defendants as a result of their conversion, breach of fiduciary duty, and unjust enrichment. An accounting and constructive trust are also sought in order to determine the extent of, and to recover, all CNEP assets which Defendants wrongfully absconded for their own personal benefit.

**THE PARTIES**

6.     Plaintiff China North East Petroleum Holdings Limited was a Nevada corporation until approximately August 31, 2013, and had its principal place of business at 445 Park Avenue, New York, New York 10022.  CNEP also had another office located at 21700 East Copley Drive, Suite 398, Diamond Bar, California 91765.  CNEP's operations are now conducted in the State of New York by virtue of the receivership.

7.     On May 2, 2016, the Receiver was appointed over CNEP by the Second Judicial District Court of the State of Nevada, County of Washoe, in an action captioned *Amy Liu, et al. v. China North East Petroleum Holdings Limited*, case number CV15-02299.  The Receiver was appointed pursuant to N.R.S. § 32.010 in order to carry a judgment into effect and to ensure the company's compliance with an order to buyout shares in CNEP.  For jurisdictional purposes, the Receiver is domiciled in the State of New York.

8.     Since his appointment, the Receiver has uncovered substantial and unequivocal evidence of Defendants' conversion of CNEP assets for their own personal benefit, as well as for the benefit of their respective family members.  CNEP did not discover, and could not with the exercise of reasonable diligence have discovered until recently, Defendants' commission of the improper acts and omissions set forth herein or the extent of the injuries suffered because such acts were inherently undiscoverable.  CNEP also asserts the doctrine of equitable tolling.

9.     Upon information and belief, Defendant Chao Jiang was CNEP's Vice President of Corporate Finance and Secretary beginning in and around 2008, and worked at CNEP's offices in California and New York.  Upon further information and belief, Defendant Jiang held signatory authority over CNEP's bank accounts, including the CNEP Bank of America Account (as defined herein).  Upon further information and belief, Defendant Jiang is a foreign citizen who resides at 22 Witte Place, West Orange, New Jersey 07052.

10.     Upon information and belief, Defendant Shaohui Chen was CNEP's Chief Financial Officer beginning on or around September 30, 2010, and worked at CNEP's office in California.  Upon further information and belief, Defendant Chen held signatory authority over CNEP's bank accounts, including the CNEP Chase Account (as defined herein).  Upon further information and belief, Defendant Chen resides at 7422 Sanctuary Drive, Corona, California 92883.

11.     Upon information and belief, Defendant Wang Hongjun was the chairman of CNEP's Board of Directors, as well as its CEO and President, from at least January 1, 2009 through May 23, 2010, and worked at CNEP's office in California.  At that time, he resigned from his position as chairman and was placed on leave from his positions as CEO and President.  Even then, however, Defendant Hongjun continued to serve as a director or otherwise exerted actual control over CNEP, and has done so at all times material to the allegations herein.  Defendant Hongjun is the son of Defendant Ju Guizhi and is married to Defendant Sun Jishuang.  Upon information and belief, Defendant Hongjun is a foreign citizen who resides at 1318 Coastal Sage Place, Walnut, California 91789.

12.     Upon information and belief, Defendant Ju Guizhi was one of CNEP's founders and served as a director or otherwise exerted actual control over CNEP at all times material to the allegations herein, and worked at CNEP's office in California. Since the company's inception, Defendant Guizhi was actively involved in the day-to-day decisions, operations, and management of the company, even during periods when it was not disclosed that she was an officer or director.  Except when she briefly served as a director from approximately November 2009 through May 2010, Defendant Guizhi had no disclosed role at CNEP, yet she engaged in numerous transactions with and on behalf of the company.  Defendant Guizhi also served for a period as Chairman of the CNEP subsidiary Songyuan North East Petroleum Technical Services Co., Ltd., and holds a ten percent equity interest in that company.  Defendant Guizhi likewise served for a period as both General Manager and as a Director of the CNEP subsidiary

Songyuan Yu Qiao Oil & Gas Development Co., Ltd.  As of February 15, 2012, Defendant Guizhi continued in her role at Songyuan Yu Qiao and was also a General Manager of the CNEP subsidiary Changling Longde Oil and Gas.  Defendant Guizhi is the mother of Defendant Wang Hongjun.  Upon information and belief, Defendant Guizhi is a foreign citizen who resides in China.

13.    Upon information and belief, Defendant Sun Jishuang served as CNEP's Treasurer/Cashier beginning in or around November of 2010, and worked at CNEP's office in California.  Defendant Jishuang is married to Defendant Hongjun.  Upon further information and belief, Defendant Jishuang is a foreign citizen who resides at 1318 Coastal Sage Place, Walnut, California 91789.

14.    By virtue of Defendants' positions as officers and directors, and because of their ability to control the business and corporate affairs of the company, Defendants owed CNEP the fiduciary duties of good faith, loyalty, and due care. Defendants were required to use their utmost ability to control and manage CNEP in a fair, just, honest, and equitable manner.  Defendants were also required to act in furtherance of the best interests of CNEP so as to benefit the company, not in furtherance of their own personal interests or benefit.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.    This Court has personal jurisdiction over Defendants because, among other reasons, Defendants are transacting business in the State of California and in this judicial district.  Defendants engaged in unlawful conduct and committed tortious acts in the State of California by, *inter alia*, misappropriating and converting CNEP property for their own personal benefit and enrichment.  Additionally, Defendants' conduct caused injury to CNEP within the State of California and in this judicial

district, and further, Defendants (i) transact substantial, ongoing business in the State of California, (ii) engage in a persistent course of conduct in the State of California, (iii) derive revenue from goods or services provided to consumers in the State of California, (iv) expect, or should reasonably expect, to have consequences in the State of California, and (v) derive revenues from interstate commerce.

17.　　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

18.　　CNEP was a Nevada corporation that was formed through a reverse merger with a shell company in April of 2004.  The company purported to engage in oil exploration, drilling, and production in China.

19.　　On or about June 15, 2009, CNEP's stock was listed and began trading on NYSE Amex LLC ("NYSE").  As of December 31, 2009, CNEP had a market capitalization of approximately $258 million and its stock was trading at $9.25 per share.

20.　　Just three years later, however, CNEP was delisted from the NYSE and the SEC revoked the registration of each class of its securities as a direct result of Defendants' conduct as described herein.

**Defendants Divert Millions of Dollars from Proceeds of CNEP's Public Offerings**

21.　　In and around September and December of 2009, CNEP raised $18.4 million and $13.5 million, respectively, through two public offerings underwritten by a New York-based investment bank (collectively, "Offering Proceeds").  At that time, Defendants Chao Jiang, Wang Hongjun, and Ju Guizhi acted, or purported to act, as officers and/or directors of CNEP.

22.　　The Offering Proceeds were deposited in CNEP's account at Bank of America in New York, New York ("CNEP Bank of America Account").  At that time, Defendants Chao Jiang and Wang Hongjun held sole signatory authority over the

CNEP Bank of America Account.  Upon information and belief, Defendant Jiang held signatory authority over the CNEP Bank of America account from its inception in 2005 until approximately October 10, 2010.  Upon further information and belief, Defendant Hongjun held signatory authority over the CNEP Bank of America account from 2005 until approximately February 7, 2011, at which time he re-signed the signature card and added his wife, Defendant Sun Jishuang, as an additional signatory.

23.     Rather than apply the Offering Proceeds to legitimate business purposes, Defendants looted the company of millions of dollars for their own personal benefit and enrichment, as well as for the benefit of their families.

24.     On or about September 23, 2009, Defendants Chao Jiang and Wang Hongjun authorized a wire transfer in the amount of $56,412.08 from the CNEP Bank of America Account to a personal bank account held in the name of Defendant Jiang's father, Mingfu Jiang – an account in which Defendant Jiang exercised control. Defendant Jiang's father did not hold any disclosed position with CNEP, and there is no known or documented business purpose for this transfer.

25.     On or about November 3, 2009, Defendants Chao Jiang and Wang Hongjun authorized another wire transfer from the CNEP Bank of America Account to a personal bank account held in the name of Defendant Jiang's father, this time in the amount of $500,000.  Again, Defendant Jiang exercised control over the recipient account, his father held no disclosed position with CNEP, and there is no known or documented business purpose for this transfer.  Defendant Jiang's father later admitted to the SEC that he received this transfer.

26.     On or about November 20, 2009, Defendant Chao Jiang's father, Mingfu Jiang, transferred $300,000 to Defendant Jiang's personal bank account.  Upon information and belief, these funds were derived from the surreptitious wire transfers of the Offering Proceeds from CNEP's Bank of America Account to Defendant Jiang's father, as outlined above.

27.     On or about December 16, 2009, Defendants Chao Jiang and Wang Hongjun authorized a third wire transfer from the CNEP Bank of America Account to a personal bank account held in the name of Defendant Jiang's father, this time in the amount of $410,000.  Again, Defendant Jiang exercised control over the recipient account, his father held no disclosed position with CNEP, and there is no known or documented business purpose for this transfer.  Defendant Jiang's father later admitted to the SEC that he received this transfer.

28.     Notwithstanding the three aforementioned transfers from the CNEP Bank of America Account to Defendant Chao Jiang's father in the aggregate sum of $966,412.08, Defendant Jiang testified falsely under oath to the SEC that none of his family members had received anything of value from CNEP, at any time, in excess of $500.

29.     Defendant Ju Guizhi also received a substantial portion of the Offering Proceeds, totaling approximately $5.85 million.  From approximately September 25-29, 2009, Defendant Chao Jiang authorized and caused a number of transfers to be made from the CNEP Bank of America Account to Defendant Guizhi.  These transfers were subsequently routed through multiple CNEP bank accounts in China before ultimately being deposited into Defendant Guizhi's personal bank account in China.  There is no known or documented business purpose for these transfers.

30.     Defendant Ju Guizhi also directed Defendant Chao Jiang to transfer $300,000 from the CNEP Bank of America Account to a personal bank account held in the name of her daughter-in-law, Defendant Sun Jishuang.  On or about November 19, 2009, Defendants Chao Jiang and Wang Hongjun effectuated the transfer of $300,000 from CNEP's Bank of America Account to Defendant Jishuang's personal bank account at Bank of the West in California.  Defendant Jishuang used these funds to purchase jewelry, a Mercedes Benz, and a home in California.  There is no known or documented business purpose for this transfer, especially considering Defendant Jishuang did not even serve as CNEP's Treasurer/Cashier until a year later.

31.     Prior to the Offering Proceeds being deposited in the CNEP Bank of America Account, there were insufficient funds to fund the transfers to Defendants Ju Guizhi and Sun Jishuang, as well as those to Defendant Chao Jiang's father.  In fact, the CNEP Bank of America Account only had a balance of approximately $84,000 just prior to the first deposit of the Offering Proceeds.

32.     In or around April of 2010, an independent director of CNEP's Audit Committee discovered a line-item in the company's draft 2009 financial statements reflecting $3.89 million was due CNEP from a shareholder.  It was subsequently determined that the $3.89 million debt was owed by Defendant Ju Guizhi, but varying explanations were given for the debt, such as that it was a one-time occurrence.

33.     In or around July of 2010, a Hong Kong accounting firm issued a report to CNEP's board of directors identifying at least 176 undisclosed, related-party transactions between CNEP and Defendants Wang Hongjun and/or Ju Guizhi that had occurred in 2009.

34.     As a result of this investigation, CNEP's board of directors learned that the $3.89 million debt had not been a one-off transfer, but rather, the result of the 176 undisclosed, related-party transactions.  Defendant Ju Guizhi later claimed these transactions occurred through her personal accounts to allegedly avoid corporate taxes and to obtain lower prices from vendors.

35.     During 2009, there were at least 176 undisclosed, related-party transactions recorded in CNEP's accounting records totaling approximately $59 million, which includes the $3.89 million debt owed CNEP by Defendant Ju Guizhi.

36.     These related-party transactions are also comprised of approximately $28 million in transactions directly or indirectly from CNEP to Defendants Wang Hongjun and/or Ju Guizhi.  The $28 million in transactions involving Defendants Hongjun and Guizhi included cash loans from CNEP to Defendants Hongjun and Guizhi of at least $17.2 million and $3.8 million, respectively.  These "loans" were not documented and did not have any written repayment terms.

37.     This related-party activity is also comprised of approximately $11 million allegedly loaned to CNEP or paid to third-parties on behalf of CNEP by Defendants Hongjun and Guizhi.

38.     As a director of CNEP, Defendant Chao Jiang was aware of his responsibility to devise and maintain a system of adequate internal controls for the company.  Nevertheless, Defendant Jiang knowingly failed to implement a system of internal accounting controls, which resulted in a number of transactions and related-party transfers that were not properly accounted for in the company's books and records.  As a result of Defendant Jiang's knowing failure to implement and maintain a system of adequate internal accounting controls at CNEP, Defendants were able to engage in the nefarious conduct described herein.

**The SEC Litigation Regarding the Offering Proceeds**

39.     On or about November 29, 2012, the U.S. Securities and Exchange Commission commenced an action against Defendants Chao Jiang, Wang Hongjun, and Ju Guizhi, among others, alleging violations of federal securities laws arising out of their unlawful diversion of the Offering Proceeds.  Defendant Sun Jishuang was also named as a relief defendant.

40.     On April 5, 2013, the SEC entered an order revoking the registration of each class of CNEP's securities.

41.     On July 14, 2015, final judgment was entered against Defendant Chao Jiang requiring, among other things, that he pay a civil penalty in the amount of $75,000.

42.     The SEC recently sought entry of default judgment against Defendants Wang Hongjun and Ju Guizhi, and its application is pending.

**The Department of Justice Litigation Regarding the Offering Proceeds**

43.     In 2013, the U.S. Department of Justice publicly announced seven criminal charges against Defendants Chao Jiang and Wang Hongjun arising out of their unlawful diversion of the Offering Proceeds.

44.     After a mistrial, Defendant Chao Jiang was subsequently charged with a single count for his willful and knowing failure to implement internal controls, to which he entered a guilty plea.  Defendant Jiang was later sentenced to a $10,000 criminal penalty, a three-year term of probation with travel restrictions, and community service.

45.     Upon information and belief, Defendant Wang Hongjun did not appear and remains a fugitive from justice.

**Defendants Continue to Raid CNEP's Assets**

46.     On or about September 30, 2010, Defendant Shaohui Chen was appointed as CNEP's Chief Financial Officer.  Upon his appointment, Defendant Chen gained signatory authority over CNEP's account at JP Morgan Chase Bank in Walnut, California ("CNEP Chase Account").  At that time, and upon information and belief, Defendant Chen held sole signatory authority over the CNEP Chase Account.

47.     Despite introducing a new company director, however, Defendants continued to loot CNEP – the only difference is they did so with Defendant Chen's participation.

48.     On or about July 5, 2012, Defendant Shaohui Chen authorized a transfer in the amount of $50,000 from the CNEP Chase Account to a personal account in the name of Defendant Chao Jiang.  There is no known or documented business purpose for this transfer.

49.     The following day, on or about July 6, 2012, Defendant Shaohui Chen authorized another transfer from the CNEP Chase Account to a personal account in the name of Defendant Chao Jiang in the amount of $50,000.  There is also no known or documented business purpose for this transfer.

50.     According to sworn testimony submitted under affidavit, Defendant Chao Jiang claims he resigned from his position with CNEP in October of 2012, and since then, he has not received any money or benefits from the company.

51.     Notwithstanding, on or about February 15, 2013, Defendant Shaohui Chen authorized a transfer in the amount of $100,000 from the CNEP Chase Account to attorneys purporting to act on behalf of Defendant Chao Jiang.  Additionally, on or about March 4, 2013, Defendant Chen authorized a transfer in the amount of $11,462.68 from the CNEP Chase Account to a personal account in the name of Defendant Jiang.  There are no known or documented business purposes for these transfers, especially given Defendant Jiang's sworn statement that he resigned from CNEP months before these transfers.

52.     Defendant Shaohui Chen also received a substantial amount of CNEP assets (above his disclosed salary) to which there is no known or documented business purpose.

53.     On or about July 5, 2012, Defendant Shaohui Chen authorized a transfer in the amount of $50,000 from the CNEP Chase Account to a personal account in his own name.  There is no known or documented business purpose for this transfer.

54.     The following day, on or about July 6, 2012, Defendant Shaohui Chen authorized another transfer in the amount of $50,000 from the CNEP Chase Account to a personal account in his name.  There is also no known or documented business purpose for this transfer.

55.     On or about February 8, 2013, Defendant Shaohui Chen authorized a transfer in the amount of $100,000 from the CNEP Chase Account to a personal account in his name.  There is no known or documented business purpose for this transfer.

56.     Like Defendant Chao Jiang, Defendant Shaohui Chen also claimed by sworn testimony under affidavit that he resigned from CNEP on December 31, 2012, and since then, he no longer served as an officer or director of the company and has not received any money or benefits from CNEP.

57.     Notwithstanding, on or about May 6, 2013, Defendant Shaohui Chen authorized a transfer in the amount of $37,500 from the CNEP Chase Account to a personal account in his name.  There is no known or documented business purpose for

this transfer, especially given Defendant Chen's sworn statement that he resigned from CNEP months before this transfer.

58.     In total, the aforementioned transfers from CNEP to Defendant Shaohui Chen between July 5, 2012 and May 6, 2013, equal $237,500.  But in its Current Report (Form 8-K) to the SEC dated as of September 30, 2010, CNEP disclosed that Defendant Chen was supposed to receive compensation in the amount of $12,500 a month.  Therefore, the transfers from CNEP to Defendant Chen exceed his stated salary for this period by approximately $112,000.

59.     In the midst of Defendants' continued, wholesale looting of the company, CNEP was delisted from the NYSE on or about July 6, 2012.

**Defendants' Final Decimation of CNEP Culminates in the Receivership**

60.     Despite supposedly tendering his resignation on December 31, 2012, Defendant Shaohui Chen was not removed as a signatory of the CNEP Chase Account until August 13, 2013.

61.     Just weeks later, on or about September 5, 2013, all of CNEP's assets were transferred to Defendant Ju Guizhi for the purpose of effecting a merger into a company called CLP Huaxing Equity Changchun City Investment Limited ("CLP").

62.     On or about June 22, 2014, CNEP completed the full merger into CLP. At that time, CNEP continued to be controlled by Defendants Wang Honjun and Ju Guizhi.

63.     At the time of the merger, CNEP had a net equity value of $191,334,784. Thereafter, its value was reduced to nothing.

64.     On or about November 24, 2015, shareholders representing over ten-percent (10%) of CNEP's outstanding shares commenced an action against CNEP in the Second Judicial District Court of the State of Nevada, County of Washoe, captioned *Amy Liu, et al. v. China North East Petroleum Holdings Limited*.

65.     On or about March 22, 2016, the Nevada court entered a judgment and buyout order against CNEP in the total amount of $19,717,479, which represents a buyout of $5.38 per share.

66.     On May 2, 2016, the Nevada court appointed the Receiver to obtain CNEP's compliance with the Judgment and Buyout Order.

67.     While his investigation is ongoing, the Receiver's review of CNEP's books and records has yielded substantial evidence of Defendants' wrongful conduct described herein.

## COUNT ONE – CONVERSION

**(Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi)**

68.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 67 above as if set forth fully herein.

69.     Defendants owed fiduciary duties to CNEP in their capacity as its officers and directors, as well as signatories of its bank accounts including the CNEP Bank of America Account and CNEP Chase Account.

70.     As fiduciaries and confidants of CNEP, Defendants were promised and were given, *inter alia*, signatory authority over the CNEP Bank of America Account and the CNEP Chase Account.

71.     Notwithstanding their relationship of trust, Defendants misappropriated CNEP assets, funds, and property, using such property for their own personal benefit and enrichment.  Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi diverted and/or misappropriated the Offering Proceeds and certain other CNEP assets and property by, *inter alia*, exercising control over the CNEP Bank of America Account, CNEP Chase Account, and other CNEP funds for their own personal benefit and enrichment.

72.     Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi were solely responsible for the acts of conversion alleged herein, and engaged in such

acts by wrongfully exceeding their authority in order to divert and interfere with CNEP property for their own personal gain and enrichment.

73.    Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi committed each act of conversion intentionally, wantonly, and maliciously.

74.    Upon information and belief, Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi continue to hold the assets and property they wrongfully diverted.

75.    As a direct and proximate result of the conversion committed by Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi, Plaintiff has been damaged in an amount of at least $19,717,479, plus exemplary damages, with interest thereon.

76.    Plaintiff is also entitled to a constructive trust on all assets owned and/or controlled by Defendants that are the product of the improperly diverted assets, funds, and property of CNEP.

## COUNT TWO – BREACH OF FIDUCIARY DUTY
### (All Defendants)

77.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 76 above as if set forth fully herein.

78.    By virtue of their service as officers and directors of CNEP, Defendants owed fiduciary duties to, and were required to act in the best interests of, the company.

79.    Defendants owed CNEP the fiduciary duty to exercise good faith and diligence in the administration of the company's affairs and in the use and preservation of its property and assets, the highest obligation of fair dealing.  Defendants, because of their positions of control and authority as officers and directors of CNEP, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, such as the wrongful diversion of the Offering Proceeds, funds from the CNEP Bank of America Account and CNEP Chase Account, as well as certain other assets, funds, and property of CNEP as described herein.

80.    Defendants also violated the fiduciary duty of loyalty by engaging in conduct designed to reduce and/or eliminate CNEP's value, for their own personal and financial interests.  Such violations include, *inter alia*, the diversion of the Offering Proceeds, funds from the CNEP Bank of America Account and CNEP Chase Account, as well as certain other assets, funds, and property of CNEP as described herein.

81.    Additionally, Defendants had a duty of care to CNEP and were required to review all relevant, material information and act with the requisite care in making business decisions.  Defendants also had a duty to prudently supervise, manage, and control CNEP's operations.

82.    Defendants violated their duty of care by grossly mismanaging CNEP. Their actions and inactions resulted in, among other things, CNEP being delisted from the NYSE, the SEC revoking the registration of each class of the company's securities, judgment being entered against the company which needlessly increased its corporate liabilities, and the various instances of harm to CNEP by certain Defendants, such as Defendants Wang Hongjun and Ju Guizhi through their continued service as CNEP officers and directors, even after Defendants' knowledge of their wrongdoing as set forth herein.

83.    Defendants' acts constitute a breach of their fiduciary duties as officers and directors, which involved intentional misconduct, gross negligence, and a knowing violation of law.  As a result of the intentional misconduct and breach of the duties described herein, Defendants are in violation of N.R.S. § 78.137 and are liable to CNEP.

84.    Since none of the related-party transactions set forth above fall under the exceptions provided for in N.R.S. § 78.140, such transactions are null and void.

85.    As a direct and proximate result of the breach of fiduciary duties committed by Defendants, Plaintiff has been damaged in an amount of at least $19,717,479, plus exemplary damages, with interest thereon.

## COUNT THREE – UNJUST ENRICHMENT

### (All Defendants)

86.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 85 above as if set forth fully herein.

87.    Defendants were enriched by diverting assets, funds, and property from CNEP for their own personal gain, and as a result, CNEP has no adequate remedy at law.

88.    The enrichment damaged CNEP because it was unable to use such assets, funds, and property for legitimate purposes, such as to maintain its operations and business.

89.    It would be inequitable and improper for Defendants to retain all direct and/or indirect assets, funds, property, and/or the benefits they realized.  Were Defendants entitled to keep such assets, funds, property, and/or benefits, it would constitute unjust enrichment.

90.    Such assets, funds, property, and/or benefits properly belong, and should be awarded, to Plaintiff, with interest thereon.

91.    Defendants are in the best position to provide information related to the proceeds and location of the assets, funds, and property they wrongfully diverted from CNEP.

92.    Absent an accounting, Plaintiff would be unable to identify the proceeds from the CNEP Bank of America Account and CNEP Chase Account, among other sources, which have been wrongfully taken and must be returned.

93.    Plaintiff is entitled to an order providing it with full access to Defendants' books and records from the inception of their involvement with CNEP to the present day.

94.    Plaintiff is also entitled to a constructive trust on all assets owned and/or controlled by Defendants that are the product of the improperly diverted assets, funds, and property of CNEP.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert W. Seiden, in his capacity as Receiver for China North East Petroleum Holdings Limited, respectfully prays the Court orders and adjudges the following relief in favor of Plaintiff and against Defendants:

A.   On Count One, judgment against Defendants Chao Jiang, Shaohui Chen, Wang Hongjun, and Ju Guizhi in an amount of at least $19,717,479, plus exemplary damages and legal interest;

B.   On Count Two, judgment against Defendants in an amount of at least $19,717,479, plus exemplary damages and legal interest;

C.   On Count Three, judgment against Defendants in an amount equal to all direct and indirect proceeds and/or benefits realized by Defendants, plus legal interest;

D.   An order requiring Defendants to provide an accounting;

E.   An order imposing a constructive trust over Defendants' assets;

F.   Plaintiff's costs, disbursements, and attorneys' fees; and

G.   Such other and further relief as the Court deems just, proper, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.


Dated:  August 11, 2016                    By:  s/ James P. Menton, Jr.

*Attorneys for Plaintiff Robert W. Seiden,*
*in his capacity as Receiver for*
*China North East Petroleum Holdings Limited*